ALLEN *v.* ROGERS.

1. EMINENT DOMAIN—BONA FIDE EFFORT TO PURCHASE IS MANDATORY AND JURISDICTIONAL.

Under Act No. 352, Pub. Acts 1925, § 4, as amended by Act No. 92, Pub. Acts 1927, a *bona fide* effort to acquire lands by purchase for highway purposes is a condition precedent to the right to institute condemnation proceedings, and therefore is mandatory and jurisdictional, and must be alleged in the notice, proved at the hearing, and determined in the order of necessity.

2. SAME—JURISDICTIONAL CONDITION MAY NOT BE WAIVED.

The jurisdictional condition of the statute that a *bona fide* effort be made to purchase the lands sought to be condemned for highway purposes must be established in fact, and may not be waived by the failure of the owners to answer, demur, or object in some way.

3. SAME—DECLARATION OF NECESSITY CONCLUSIVE ONLY WHERE SUPPORTED BY PROOF.

The declaration of the highway commissioner, in the order of necessity, that he had been unable to agree with the owners of the land on its purchase may be questioned where there is no proof to support such declaration.

4. SAME—CONSTITUTIONAL LAW—HIGHWAYS AND STREETS.

That portion of a city street lawfully established as part of a State trunk line highway is not a street in the sense used in section 27, Art. 8, of the Constitution, and therefore its improvement by the State, requiring the taking of private property therefor, is not therein forbidden.

5. HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—CONTROL OF STREETS BY CITIES IS NOT EXCLUSIVE.

The reasonable control of streets reserved to cities under the Constitution (article 8, § 28) does not give them exclusive control, preventing the State from assuming any control over State trunk line highways running through cities.

6. Eminent Domain—Widening State Trunk Line Highways in
Cities.

In the absence of any constitutional provision, the legislature
has the right to authorize the widening of State trunk line
highways running through cities, and to condemn private prop-
erty for that purpose.

7. Same—Power of Legislature is Subject Only to Constitu-
tional Restrictions.

The right to exercise the power of eminent domain is a matter
entirely under the control of the legislature, subject to such
restrictions as are found in the Constitution.

8. Same—Municipal Corporations—Highways and Streets—In-
terference With Local Self-Government.

The contention that the authority conferred on the State high-
way commission by Act No. 352, Pub. Acts 1925, as amended
by Act No. 92, Pub. Acts 1927, to condemn land for the pur-
pose of improving and widening State trunk line highways
within the corporate limits of cities, is an unwarranted in-
terference with the local self-government of cities, is without
weight, since it is not a matter of purely local concern, and
the authority so conferred may be exercised only with the
cities' consent.

9. Same—Statutes—Validity.

Act No. 352, Pub. Acts 1925, as amended by Act No. 92, Pub.
Acts 1927, authorizing the State highway commission to con-
demn land for the purpose of improving and widening State
trunk line highways within the corporate limits of cities, is
valid.

Error to Wayne; Miller (Guy A.), J. Submitted
January 25, 1929. (Docket No. 120, Calendar No.
34,154.) Decided March 29, 1929.

Certiorari by Ernest A. Allen and others to re-
view proceedings by Frank F. Rogers, State high-
way commissioner, in the matter of widening a State
trunk line highway. From judgment quashing the
proceedings, defendant brings error. Affirmed.

*Wilber M. Brucker,* Attorney General, and *Harry N. Deyo,* Assistant Attorney General, for appellant.

*Robert M. Brownson* and *Gerald M. Meehan,* for plaintiffs Ernest A. Allen and Frederick G. Allen, trustees.

*Wesley L. Nutten,* for plaintiff Lucy Richmond, executrix of Harriet Richmond Estate and administratrix of Alberta Richmond Estate.

*Washington I. Robinson,* for plaintiffs Clara Sauble, Harold L. Bobier, and Vera V. Bobier.

McDONALD, J. The defendant has brought error to review the judgment of the Wayne circuit court in quashing the proceedings instituted by him as highway commissioner to take the plaintiffs' lands for the widening of Grand River avenue, part of which is situated within the corporate limits of the city of Detroit.

The record presents the following questions:

1. Does the statute make mandatory a *bona fide* effort to acquire the lands by purchase as a condition precedent to the right to institute condemnation proceedings?

The proceedings were brought under authority of Act No. 352, Pub. Acts 1925, as amended by Act No. 92, Pub. Acts 1927. Section 1 of Act No. 92 authorizes the State highway commissioner to secure by gift or purchase the lands required for the public improvement. Section 4 provides that:

"Whenever the commissioner or commissioners shall be unable to agree with any person interested in any such property for the purchase thereof, * * * the commissioner or commissioners may make a

written determination of the necessity of the particular road construction &ast; &ast; &ast; for which such property is desired."

It is claimed by the defendant that this language is not mandatory, but merely permissive. It is true that it does not expressly command that an effort shall be made to purchase, but it does say that the necessity shall not be determined until a good-faith effort has been made to acquire the lands by agreement with the parties. Very similar language was used in a statute relative to the condemnation of lands for railroad purposes, and was held to be mandatory by this court in *Toledo, etc., R. Co.* v. *Railway Co.*, 62 Mich. 564. It was there said:

"It will be seen, in above quotations, the statute provides that 'in case any railroad company is unable to agree for the purchase of any real estate, property, or franchises required for the purpose of its incorporation,' it may then resort to proceedings for condemnation. How. Stat. § 3331.

"The effort to agree must be a *bona fide* one, showing an attempt to purchase, by treaty between the parties, the property and franchises described in the petition, and a failure so to do, before other proceedings can be taken. This is jurisdictional, and must appear on the face of the petition."

And in 2 Nichols on Eminent Domain, p. 1026, § 377, the author says:

"It has frequently happened, however, that a legislature, in granting the power of eminent domain, while not specifically providing that the power shall not be exercised unless the necessary land cannot be secured by purchase, has enacted that if the corporation is unable to obtain necessary land by purchase, it may take the same in a manner more particularly set forth. Under such statutes, when

the sole authority to exercise eminent domain is given in this manner, it is generally held that a *bona fide* attempt to purchase the land by agreement between the parties and a failure to do so is a condition precedent to the initiation of condemnation proceedings, and that failure to comply with this requirement renders any subsequent proceedings void. This attempt and failure must appear on the record as a foundation of the jurisdiction invoked.''

In this State no man's land can be taken from him for the public use except by gift, purchase, or condemnation. If he is unwilling to dedicate it and will not sell for a reasonable price, resort may be had to condemnation. It has long been the policy of the State to require a good-faith effort to purchase before putting the owner to the trouble and expense of a condemnation suit. It is a wholesome policy, and, if the legislature of 1927 intended to make a change, it should have done so by language more reasonably expressive of such intention than appears in this statute.

It is our judgment that this provision of the statute is mandatory and requires a good-faith effort to purchase as a condition precedent to a hearing on the question of necessity. It is jurisdictional and must be alleged in the notice, proved at the hearing, and determined in the order of necessity. If this is not done, all subsequent proceedings are void.

The defendant claims that the condition may be waived by the failure of the owners to answer, demur, or object in some way. In *Re Petition of Rogers,* 243 Mich. 517, it was said:

''The statute of eminent domain is to be strictly construed, and its jurisdictional conditions must be established in fact and may not rest upon technical waiver or estoppel.''

In the instant case it was not averred in the notice that the commissioner had been unable to purchase; and no proof of such was made at the hearing, but, in the order determining necessity, it was stated:

"I further determine that it is necessary to take for such improvement an easement for public highway purposes over and upon certain private property, for the purchase of which I have been unable to agree with the owners or persons interested therein."

It is the claim of the defendant that, having made this declaration in the order of necessity that he had been unable to agree with the owners on the purchase, the truth of such declaration cannot thereafter be questioned. He relies on the following provision of the statute:

"The declaration of the commissioner or commissioners that he or they have been unable to agree with the owner, or owners, for the purchase of such property and his or their determination of the necessity of the project and of taking the particular property described therefor, shall not thereafter be questioned."

By this the legislature did not mean that if the commissioner did not follow the statute, did not aver in his notice that a good-faith effort had been made to purchase, and did not make proof of it on the hearing, his declaration in the order of necessity could not be thereafter questioned. What we think the legislature meant was that, if there is any proof to support the commissioner's declaration that he had made a good-faith effort to purchase, his declaration is conclusive. It cannot thereafter be questioned. His jurisdiction to proceed does not depend upon the correctness of his judgment on the facts

presented by the proof, but upon his observance of the law. His jurisdiction can be questioned, but not his findings on the facts, unless the record shows that there is no evidence to support them.

It is our judgment that the commissioner acquired no jurisdiction to proceed to a hearing on the question of necessity for taking the lands, and that therefore the circuit judge did not err in dismissing the proceedings.

2. It is further claimed by the plaintiffs that the Constitution of Michigan prohibits the State from widening city streets, and that proceedings to condemn property for that purpose must be instituted and carried on under the provisions of the charter of the city of Detroit.

The constitutional provision is as follows:

"The legislature shall not vacate nor alter any road laid out by commissioners of highways, or any street, alley or public ground in any city or village or in any recorded town plat." Section 27, Art. 8, Constitution of 1908.

That portion of Grand River avenue which the highway commissioner is attempting to widen within the corporate limits of the city of Detroit is not a street in the sense used in the Constitution. It is a State trunk line road, lawfully established as such. It will be noticed by reference to the statute, Act No. 92, Pub. Acts 1927, § 1, subd. (g), that the State highway commissioner is given no authority to widen any city street except State trunk line roads. It is provided as a condition precedent to the commencement of any proceedings to widen any street within the corporate limits of the city that it shall be converted into a State trunk line road by designation of the highway commission with the consent of the city council expressed by resolution. That

action was taken, though in this case it was unnecessary because, long before this portion of Grand River avenue was taken into the city, it had been established as a State trunk line road. It was established as such in 1913 and was not taken into the city until 1926, at which time the improvement was well under way. Its character as a State trunk line road was not changed by the annexation. The city accepted it as such, and by resolution of the council consented that it should retain that character. It was good business on the part of the city to do so, for the State annually pays $2,000 a mile for the maintenance of State trunk line roads that are within their corporate territory. This expenditure by the State is on the theory that a State trunk line road running through a city is not a matter of purely local concern, but is for the benefit of the people of the entire State. Grand River avenue is not a city street in the constitutional sense, and, therefore, its improvement by the State, which requires the taking of private property for that purpose, is not forbidden by section 27, Art. 8, Michigan Constitution of 1908.

But it is further urged that the Constitution gives to cities exclusive control of their streets and that fact prevents the State from assuming any control over them. The Constitution does not so read:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships." Section 28, Art. 8, Michigan Constitution of 1908.

This section of the Constitution was construed by the court in *People* v. *McGraw*, 184 Mich. 233. After quoting from the proceedings and debates of the constitutional convention, it was said:

"From this, and also from reading the debates with reference to the insertion of the word 'reasonable,' it is clear that it was not the intention of the framers of the Constitution to deprive absolutely the State itself of control over its highways and bridges in the cities, villages, and townships   *   *   *. In other words, the municipality retains *reasonable control* of its highways, which is such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto."

The State is committed to a comprehensive system of highway development which requires that it should extend its trunk line roads through cities. The legislature has undertaken to bring this about by providing for co-operation between the cities and the highway department. Co-operation by the cities is not compulsory, but the proposition is made so attractive that, for financial reasons and for the general public good, cities are willing to co-operate. This they may do without relinquishing their constitutional right to a reasonable control of their streets. Other constitutional objections are urged against the statute under which the State highway commissioner is proceeding to widen Grand River avenue. We have considered them, but do not think they have sufficient merit to require discussion.

In the absence of any constitutional prohibition, there is no doubt as to the right of the legislature to authorize the widening of State trunk lines running through cities and to condemn private property for that purpose. The right to exercise the power of eminent domain "is a matter entirely under the control of the legislature, subject to such restrictions as are found in the Constitution." *Loomis* v. *Hartz*, 165 Mich. 662.

The authority of the city of Detroit to exercise the power of eminent domain for various local public purposes is derived from the legislature of the State, and is subject to legislative modification except as forbidden by the Constitution. There seems to be no constitutional reason for denying the right of the legislature to authorize the condemnation of lands within the corporate limits of the city by the State highway department for the improvement of State trunk line roads.

There is no weight to the argument of counsel that the authority conferred by the act constitutes an unwarranted interference with the local self-government of cities. This would be true were it not for the fact, as heretofore pointed out, that the widening of a State trunk line road running through a city is not a matter of purely local concern, and for the further fact that the authority conferred on the State highway commission can only be exercised with the cities' consent.

It is our conclusion that the act in question is valid and that the State highway commission is lawfully empowered to widen Grand River avenue, and for that purpose to acquire by condemnation lands within the corporate limits of the city of Detroit. However, because the records do not show a good-faith effort on the part of the commissioner to acquire the lands by purchase before invoking condemnation proceedings, the judgment of dismissal entered by the lower court is right and should be affirmed. It is affirmed, with costs to the plaintiffs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred. POTTER, J., took no part in this decision.