ALLEN *v.* STATE HIGHWAY COMMISSIONER.

1. MUNICIPAL CORPORATIONS—ORDINANCES—BURDEN OF PROOF.
   A party claiming an ordinance is arbitrary, unreasonable or
   discriminatory has the burden of so showing.

2. SAME—HIGHWAYS AND STREETS—STATE TRUNK LINE HIGHWAYS.
   The reasonable control of streets reserved to cities under the
   Constitution does not give them exclusive control, preventing
   the State from assuming any control over State trunk line high-
   ways running through cities (Const 1908, art 8, § 28).

3. SAME—REASONABLE CONTROL OF STREETS—CONSTRUCTION OF CON-
   STITUTION.
   The "reasonableness" of a city's control of its streets is not
   within the final determination of the city in all cases, but may
   be determined in accordance with the legislature's interpreta-
   tion in some instances, provided such interpretation can be
   approved by the court (Const 1908, art 8, § 28).

4. CONSTITUTIONAL LAW—CONSTRUCTION.
   The legislative interpretation of a provision of the Constitution
   can give rise to a justiciable question.

5. SAME—COURTS—MUNICIPAL CORPORATIONS—CONTROL OF STREETS.
   The court would not ordinarily substitute its judgment for
   that of a city as to the control of its streets (Const 1908,
   art 8, § 28).

6. HIGHWAYS AND STREETS—STATE TRUNK LINE HIGHWAYS.
   A State assumes an obligation to the people of the State in
   general to see to it that a trunk line highway, which it

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations §§ 173, 177, 178.
[2, 3, 5, 8, 9] 37 Am Jur, Municipal Corporations § 314.
[6, 8, 9] 25 Am Jur, Highways § 254.
[7] 11 Am Jur, Constitutional Law §§ 96, 128.
[8, 9] 5 Am Jur, Automobiles § 58; 25 Am Jur, Highways § 211.
[10] 14 Am Jur, Costs § 91.

establishes and which includes a part located within the limits of a city, is so maintained and controlled as to be reasonably available for the flow of traffic (CL 1948, § 750.498; PA 1949, No 300, § 675 [d]).

7. STATUTES—PRESUMPTION OF CONSTITUTIONALITY.
   Statutes are presumed to be constitutional.

8. HIGHWAYS AND STREETS—TRUNK LINE HIGHWAYS—STATE HIGHWAY COMMISSIONER—MUNICIPAL CORPORATIONS.
   Statutes authorizing State highway commissioner and State police commissioner to place signs prohibiting parking of vehicles upon State trunk line highways even within city limits, when such action is found to be in the interest of public safety and convenience *held,* not in violation of provision of the Constitution giving cities the "reasonable" control of the streets within their limits (Const 1908, art 8, § 28; CL 1948, § 750.498; PA 1949, No 300, § 675 [d]).

9. SAME—STATE OFFICERS—RESTRICTION OF PARKING ON STATE TRUNK LINE HIGHWAYS.
   Order issued jointly by State highway commissioner and State police commissioner, which prohibited parking on a portion of a State trunk line highway within the limits of a city, issued pursuant to State statutes *held,* not invalid as in contravention of provision of the Constitution giving cities the reasonable control of their streets (Const 1908, art 8, § 28; CL 1948, § 750.498; PA 1949, No 300, § 675 [d]).

10. COSTS—PUBLIC QUESTION—STATE TRUNK LINE HIGHWAYS WITHIN CITIES.
    No costs are allowed in suit testing the validity of statutes empowering the State highway commissioner and the State police commissioner to restrict parking on portion of State trunk line highways located within the limits of cities, a public question being involved (Const 1908, art 8, § 28; CL 1948, § 750.498; PA 1949, No 300, § 675 [d]).

Appeal from Ingham; Coash (Louis E.), J. Submitted October 8, 1953. (Docket No. 31, Calendar No. 45,731.) Decided December 29, 1953.

Bill by Robert Allen and others against Charles M. Ziegler, State Highway Commissioner, and Donald S. Leonard, Commissioner of the Michigan State

Police, to enjoin defendants from prohibiting parking of vehicles on a State trunk line highway within city limits of City of East Lansing. City of East Lansing intervenes as party plaintiff. Decree for plaintiffs. Defendants appeal. Reversed.

*Joseph W. Planck,* for plaintiffs.

*Barnard Pierce,* for intervening plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Eugene F. Townsend,* Assistants Attorney General, for defendants.

*Amici Curiae:*

*Frederick McGraw.*

*John C. Jacoby,* General Counsel, Wayne Board of County Road Commissioners and County Road Association of Michigan.

REID, J. The individual plaintiffs filed the bill of complaint in this case to enjoin defendants from prohibiting parking of vehicles at the curb on the north half of US 16 between Charles street and Haslett street in East Lansing and from continuing to maintain "no parking" signs at such location along such street, and praying that CL 1948, § 750.498 (Stat Ann 1951 Cum Supp § 28.766) and PA 1949, No 300, § 675(d), as amended by PA 1951, No 47 (Stat Ann 1951 Cum Supp § 9.2375[d]) be declared unconstitutional and that a certain traffic order hereinafter set forth, dated May 3, 1951, be declared null and void. The city of East Lansing intervened as plaintiff. From a decree for plaintiffs, the defendants appeal.

This suit involves a difference between the State authorities and the city government of East Lansing co-operating with owners of lands abutting on US 16, over the control of the trunk line road through East Lansing, so far as concerns parking of vehicles along the north half of US 16 in East Lansing.

It is a matter of historical knowledge that from a period early in the history of Michigan there existed a wagon road known as Grand River road, from Detroit to the banks of the Grand river at what is now the city of Lansing. This highway known now as US 16 was a trunk line in fact from an early history of the State. East Lansing gave up control of Grand River avenue to the county road commission in 1924 as part of the county road system. Later the State highway department succeeded to the county road commission in control of the trunk line.

PA 1913, No 334, § 2, div 9 (CL 1948, § 250.2 [Stat Ann § 9.862]), provided for the establishment of the street or highway in question as a State reward trunk line highway.

Later enactments provided further as to this trunk line.

Subd (d) of PA 1949, No 300, § 675, as amended by PA 1951, No 47 (Stat Ann 1951 Cum Supp § 9.2375), is as follows:

"The State highway commissioner with respect to State trunk line highways and the county road commission with respect to county roads, acting jointly with the commissioner of the Michigan State police, may place signs prohibiting or restricting the stopping, standing, or parking of vehicles on any highway where in the opinion of said officials as determined by an engineering survey, such stopping, standing, or parking is dangerous to those using the highway or where the stopping, standing, or parking of vehicles would unduly interfere with the free

movement of traffic thereon. Such signs shall be official signs and no person shall stop, stand, or park any vehicle in violation of the restrictions stated on such signs. Such signs shall be installed only after a proper traffic order is filed with the county clerk."

CL 1948, § 750.498 is as follows:

"Upon request of any township board, county road commission, or the officials of any incorporated city or village, or upon their own initiative, the State highway commissioner and the commissioner of public safety, acting jointly may investigate or cause to be investigated the traffic conditions on any State trunk line highway within this State, and, if upon such investigation they shall find it in the interest of public safety and convenience, they may direct the said State highway commissioner, township board, county road commission, city or village officials, to erect and maintain, take down, regulate or control such parking, speed and traffic control signs, signals or devices as the said State highway commissioner and commissioner of public safety shall designate, and in default thereof, said State highway commissioner and commissioner of public safety shall be authorized to cause such designated signs, signals and devices to be erected and maintained, taken down, regulated or controlled, in the manner previously directed, and pay for same out of the highway fund designated. A public record of any and all such traffic signs, signals or devices so authorized shall be kept in the office of the State highway commissioner. Any person who shall, on any State trunk line highway in any township, city or village, fail to · observe any parking, speed or traffic signs, signals or devices authorized as aforesaid, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than 100 dollars or by imprisonment in the county jail for not more than 10 days or

by both such fine and imprisonment in the discretion of the court."

Exhibit A of the record in this case is as follows:

"Michigan State Highway        Michigan State Police
   Department                      Donald S. Leonard
   Charles M. Ziegler              Commissioner
State Highway Commissioner

"State of Michigan

"State Seal

"6.    County Clerk

"Traffic Control Order

"Order No. P33–183–51    Effective Date June 1, 1951.

"In accordance with law we have jointly caused to be investigated traffic conditions on State trunk line highway US 16 in the city of East Lansing in Ingham county, and in the interest of public safety and convenience hereby direct the officials of said MICHIGAN STATE HIGHWAY DEPARTMENT, MICHIGAN STATE POLICE, city of East Lansing and Ingham county to erect, maintain and enforce sufficient and suitable signs upon and along said highway prohibiting traffic from parking at any time within the right of way of the south half of State trunk line highway US 16 between the westerly limit (Coolidge road) of the city of East Lansing and the easterly limit (Milford street) at said city; parking at any time within the right of way of the north half of State trunk line highway US 16 between the said westerly limit and a point 264 feet west of Evergreen avenue; and parking at any time within the right of way of the north half of State trunk line highway US 16 between M.A.C. avenue and the said easterly limit of said city.

"It is directed that this order be filed in the office of the State highway commissioner of the State of

Michigan and a copy thereof in the office of the commissioner of the Michigan State police.

> "DONALD S. LEONARD
>      Commissioner of the Michigan
>      State Police
>
> "Dated May 3, 1951

"CHARLES M. ZIEGLER
   State Highway Commissioner
     of the State of Michigan
"Dated May 3, 1951"

In *Bowers* v. *City of Muskegon,* 305 Mich 676, we say at page 685:

"The failure of plaintiffs to show that the ordinance is arbitrary, unreasonable, discriminatory or one for the purpose of raising revenue compels us to affirm the trial court in dismissing plaintiffs' bill of complaint."

This was a case where the right of the city to erect parking meters on streets not spoken of as trunk line streets, was questioned. This case was decided before the passage of the statutes so far as affects installation of parking meters and placing of signs controlling traffic on State trunk lines is concerned, and before the making of the order complained of in the instant case.

Plaintiff city relies upon Const 1908, art 8, §§ 27 and 28, which are as follows:

"Sec. 27. The legislature shall not vacate nor alter any road laid out by commissioners of highways, or any street, alley or public ground in any city or village or in any recorded town plat.

"Sec. 28. No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without

the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Traffic ordinance No 26 was adopted by the plaintiff city, October 6, 1947. By its terms, 1-hour parking is permitted in front of (in addition to certain other properties on US 16) the places of business of the individual plaintiffs. The individual plaintiffs gave testimony that their business suffered by reason of the termination of the 1-hour parking privilege.

J. Carl McMonagle, director of planning and traffic for the State highway department, testified:

"The reason we made our study is that we had a problem of trying to move some—well, it ranges from 20,000 vehicles down around Bogue street to 30,000 vehicles up around the junction of M–43 and US–16, through 28 feet of pavement on one side, and 28 to 34 on the other. Now, in 1946 the Michigan State highway department and the city of East Lansing removed the parking from the south side to give us more capacity. What we are trying to do is only to get more capacity on US–16 through the city of East Lansing. We are trying to move on the north side, say, an average of around 12,000 vehicles a day, 12 to 14 thousand vehicles a day.  *  *  *

"I sent a crew of men into the field with automatic traffic recorders and these traffic recorders are placed down and left for a period of time that we might designate necessary. In this particular survey it was for one full week. We take traffic counts and we make manual turning movements. We send men into the field to actually manually check the turning movements. That is done under the direction of a

field engineer who takes his orders from the Lansing office. The way we operate he might get some orders from me or my assistant but the order of the survey was directed definitely under my own personal direction. After these counts are made they are brought back into the office, tabulated and analyzed and then made up into charts and every one is entirely checked and finally submitted to me as a final report. The charts were made by draftsmen after the data was brought in by the field men, and an analysis is made by a section in the office under Mr. Eisenach's direction, and he brings this final report to me."

Mr. McMonagle further testified:

"*Q.* Speaking of this particular situation right here on the portion of the street in question in East Lansing, what is your opinion with reference to the problem and its connection with public safety and convenience there, I mean the use of the highway?
\* \* \*

"*A.* Well, my opinion on that is that if we were to build that highway today carrying 14,000 vehicles, we would have to require 4 lanes of traffic. Now, we are trying to put 14,000 vehicles every day through a very meager 2 lanes, and my opinion is that when you do that you are creating a hazardous condition that is bound to result in maybe not serious accidents but in minor accidents, property damage, and a congestion that can only be harmful not only to the moving traffic but to business itself."

"The reasonable control of streets reserved to cities under the Constitution (article 8, § 28) does not give them exclusive control, preventing the State from assuming any control over State trunk line highways running through cities." *Allen* v. *Rogers* (syllabus 5), 246 Mich 501.

The right to reasonable control of their streets is not a gift of an arbitrary prerogative to the cities, villages and townships. The reasonableness of the

city's control of its streets is not to be within the final determination by the city in all cases, for that in practical effect could erase the word "reasonable" from the constitutional provision. The reasonableness may be determined in accordance with the State legislature's interpretation in some instances provided that such interpretation can be approved by the court. Interpretation can give rise to a justiciable question. The court would not ordinarily substitute its judgment for that of the city as to the control of the streets. However, in this case, we have a conflict between the city and abutting property owners on the one hand, and the State legislature, the State highway commissioner and State commissioner of police on the other hand. The State by the establishment of a trunk line highway which includes the street in question in East Lansing, thereby assumed an obligation to the people of the State in general to see to it that the street in question, together with the trunk line in general, is so maintained and controlled as to be reasonably available for the flow of traffic.

The State legislature, by the statutes complained of, has interpreted the word "reasonable" to indicate such a reservation of the control of streets that an order such as that of May 3, 1951, could not well be reasonably opposed by the city. We should presume the statutes constitutional and as applied to the undisputed facts in this case, both statutes seem not unconstitutional, and we so determine. The statutes being constitutional, the order of May 3, 1951, is, under the facts shown in the record, a proper order and we decline to determine that it is void. We uphold that order.

The decree appealed from is reversed. A decree will be entered in accordance with this opinion. No costs, a question of public importance being involved.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, and BOYLES, JJ., concurred with REID, J.

SHARPE, J. (*concurring*). I concur in the result of Mr. Justice REID's opinion. Article 8, § 28, of the Michigan Constitution (1908) provides in part as follows:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Under the above section of the Michigan Constitution we have held that a municipality has the power to exercise reasonable control of the streets, alleys and public places within its own limits. See *North Star Line, Inc.,* v. *City of Grand Rapids,* 259 Mich 654. However, that part of US 16 in controversy here became a part of Ingham county road system on September 10, 1924, and on the same date it was established as a State trunk line highway. By such action US 16 not only was a city street but also a part of the State highway systems. I note that the city of East Lansing on September 10, 1924, adopted a resolution, a copy of which reads as follows:

"Resolution by Alderman Hallman. Resolved, that the common council of the city of East Lansing, Ingham county, Michigan hereby consents, for and on behalf of said municipality, that the board of county road commissioners of said county may take over as a part of the county road system the following described streets and parts of streets: Grand River avenue, beginning at its junction with Michigan avenue east to the east city limits, known as Project FA–88–C–2. Resolution adopted: Yeas, 3; Nays, none." (The project referred to was a Federal aid project.)

Under the above resolution the city of East Lansing released and surrendered its rights to control

parking in that part of US 16 involved in this case. It follows that in such case CL 1948, § 750.498 (Stat Ann 1951 Cum Supp § 28.766) and PA 1949, No 300, § 675 (d), as amended by PA 1951, No 47 (Stat Ann 1951 Cum Supp § 9.2375 [d]) of the Michigan vehicle code is not unconstitutional.

BOYLES, J., concurred with SHARPE, J.