JOURDIN *v.* CITY OF FLINT.

HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS—STATE TRUNK-
LINE HIGHWAYS—REPAIRS—EQUALLY DIVIDED COURT.

Verdict and judgment for plaintiff motorist against defendant
city for injuries sustained due to failure of latter's employees
to maintain proper barricades to warn drivers of hole city
was repairing on State trunk-line highway within city limits
pursuant to contract with State highway commissioner is
affirmed by an equally divided court (CLS 1956, § 242.1; CL
1948, § 242.3).

Appeal from Genesee; Elliott (Philip), J. Sub-
mitted June 3, 1958. (Docket No. 4, Calendar No.
47,246.) Decided February 20, 1959.

Case by James Jourdin against the City of Flint,
a municipal corporation, for personal injuries sus-
tained by reason of lack of proper barricade during
highway repairs on State trunk-line highway within
city limits. Verdict and judgment for plaintiff. De-
fendant appeals. State of Michigan intervenes on
appeal. Affirmed by an equally divided court.

*Pelavin & Gottlieb* (*Norman N. Gottlieb,* of coun-
sel), for plaintiff.

*William J. Kane, Don W. Mayfield* and *Wade D.
Withey,* for defendant.

*Paul L. Adams,* Attorney General, *Samuel J.
Torina,* Solicitor General, *Samuel D. Frane,* As-
sistant Attorney General, for intervenor State of
Michigan.

---

REFERENCES FOR POINTS IN HEADNOTES
25 Am Jur, Highways § 411.

KAVANAGH, J. (*for reversal*).  Plaintiff sued the city of Flint for damages resulting from injuries claimed to have been due to the failure of the city employees to maintain proper barricades to warn drivers on the highway of a hole in the highway which the city was repairing.

The accident happened about 10 o'clock in the evening on June 7, 1955, after working hours of the repair crew.  It is admitted that Dort highway, on which the repair work was being done, is and always has been a part of US–10, a State trunk-line highway, beginning at the foot of Woodward avenue in the city of Detroit and running northwesterly up Woodward avenue to the city of Pontiac, thence through Flint, Saginaw, and across the State of Michigan to Ludington.  The place where the accident happened is within the corporate limits of the city of Flint.

It is stipulated that Dort highway, at the point of the accident, was built by the State of Michigan in 1926 as a State trunk-line highway, and that it has been maintained by the State highway commissioner since that date; that in most years the actual maintenance work was done by Genesee county under contract with the State highway commissioner.  In 1954 the State highway commissioner entered into a contract with the city of Flint for maintenance, and the city of Flint was in the performance of this contract when the accident occurred.  By the terms of this contract the city of Flint performed the work of maintenance and was to be reimbursed by the State highway commissioner on the basis of the city's cost.

Plaintiff based his claim for liability on CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), which reads as follows:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this

State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation *whose corporate authority extends over such public highway,* street, bridge, sidewalk, crosswalk or culvert, *and whose duty it is to keep the same in reasonable repair,* such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." (Emphasis supplied.)

It is the position of the plaintiff that the city's corporate authority extends over such public highway, and that the city had a duty to keep the same in reasonable repair. Plaintiff also claims a statutory duty on the part of the city to keep in reasonable repair all public highways that are within its jurisdiction under CL 1948, § 242.3 (Stat Ann 1958 Rev § 9.593), which reads as follows:

"It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all public highways, streets, bridges, sidewalks, crosswalks, and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel."

At the conclusion of the plaintiff's proofs, and again at the conclusion of defendant's proofs, defendant city made a motion for a directed verdict, which the court took under advisement under the Empson act (CL 1948, § 691.691 *et seq.* [Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 *et seq.*]). The jury returned a verdict in the amount of $2,500. Defendant city then filed a motion for a judgment *non*

*obstante veredicto* for the following reasons: (1) that the plaintiff had failed to sustain the burden of proof establishing negligence on the part of the city; (2) that the plaintiff failed to establish any negligence on the part of the city which would be a proximate cause of the accident; (3) that as a matter of law, at the time and place this accident occurred, the Dort highway was a State trunk-line highway, and, being such, it was not the duty of the city of Flint, as provided in CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), to maintain said trunk-line highway, but was the duty of the State highway commissioner, and, therefore, the city is not liable under said statute; (4) that as a matter of law, as a contractor with the State highway commissioner for maintenance of the Dort highway at the time and place the accident occurred, the city of Flint was carrying out governmental duties of the State highway commissioner, and, therefore, was immune from suits for negligently performing the duties contracted for with the State highway commissioner.

It is admitted by both plaintiff and defendant that the State highway commissioner is not liable for negligence in the performance of his duties in constructing or maintaining State trunk-line highways.

Defendant's main contention is that it was not the duty of the city to keep and maintain Dort highway in reasonable repair at the place the accident happened, but, rather, that it was the duty of the State of Michigan under CL 1948, §§ 225.2b, 250.61, and CLS 1956, § 250.31 (Stat Ann 1958 Rev §§ 9.204, 9.901, and Stat Ann 1955 Cum Supp § 9.881).

The circuit judge denied defendant's motion, saying the negligence of the defendant and proximate cause were, on the evidence received, questions for the jury, and that under the statutes there was a duty on the part of the city to keep in reasonable repair "all public highways, streets  *  *  *  that are

within their jurisdiction, and under their care and
control, and which are open to public travel." (CL
1948, § 242.3 [Stat Ann 1958 Rev § 9.593].) The trial
court indicated that it did not believe that any of
the statutes cited by defendant removed this duty, or
that the city could avoid it by entering into a contract
with the State highway commissioner. The court
held that one who is injured comes within the terms
of liability set forth in CLS 1956, § 242.1 (Stat Ann
1958 Rev § 9.591).

Defendant city appeals from the denial of the mo-
tion for judgment *non obstante veredicto.*

The attorney general, under his statutory powers,
intervened and filed a brief on behalf of the State of
Michigan.

A decision in this case rests on the construction
to be placed upon the several statutes mentioned and
the proper construction of CLS 1956, § 242.1 and CL
1948, § 242.3 (Stat Ann 1958 Rev §§ 9.591, 9.593), and
particularly that portion of CLS 1956, § 242.1 (Stat
Ann 1958 Rev § 9.591), which reads as follows:

"whose corporate authority extends over such
public highway, street,  *  *  *  and whose duty it
is to keep the same in reasonable repair."

and the portion of CL 1948, § 242.3 (Stat Ann 1958
Rev § 9.593), which states:

"It is hereby made the duty of  *  *  *  cities
*  *  *  to keep in reasonable repair, so that they
shall be reasonably safe  *  *  *  for public travel,
all public highways, streets,  *  *  *  *that are within
their jurisdiction, and under their care and control,
and which are open to public travel."* (Emphasis
supplied.)

The plaintiff, in attempting to show that the city
has a duty to keep the highway in reasonable repair,
claims that this is implied as natural corollary of the
right to control, and contends that such reasoning

is supported by article 8, § 28, of the Michigan Constitution of 1908, which provides as follows:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The question of reasonable control under this section of the Constitution has been under discussion by our Court several times in late years until it would seem that there could be no question with regard to the meaning of these words.

In the case of *People* v. *McGraw,* 184 Mich 233, at pp 237, 238, we discussed this particular section of the Constitution and stated as follows:

"In the study of section 28, it is interesting to notice what the committee on submission and address to the people said with reference thereto, in submitting the proposed revision to the people (2 Proceedings and Debates of the Constitutional Convention, p 1433):

" 'This is a new section, and its purpose is to prevent the use of streets, alleys, highways, and public places without the consent of the local authorities first had and obtained. The word "reasonable" was inserted to place a limitation upon the authority cities, villages and townships may exercise over the streets, alleys, highways, and public places within their corporate limits. And it was pointed out in the debates that without the word "reasonable," or a similar qualification, the section would practically deprive the State itself of authority over its highways and public places.'

"From this, and also from reading the debates with reference to the insertion of the word 'reasonable,' it is clear that it was not the intention of the framers of the Constitution to deprive absolutely the State itself of control over its highways and bridges in the cities, villages, and townships. The claim that the reservation should be limited to the control of public

utility corporations, to our minds, overlooks entirely the express language of the last sentence of said section 28. By giving the language of the whole section its ordinary and natural meaning, public utilities were placed under control of the local authorities, and the local authorities may control within reason the use of their streets for any purposes whatsoever not inconsistent with the State law.

"Taking the sections together, they should be so construed as to give the power to municipalities to pass such ordinances and regulations with reference to their highways and bridges as are not inconsistent with the general State law. In other words, the municipality retains *reasonable control* of its highways, which is such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto. This construction allows a municipality to recognize local and peculiar conditions and to pass ordinances regulating traffic on its streets, which do not contravene the State laws. The congested condition of traffic on many of the streets of the city of Detroit is a matter of common knowledge, and these conditions make it absolutely necessary, for the protection of pedestrians and the drivers of vehicles, to enact rules and regulations peculiarly adapted to the conditions there found, and to enact ordinances to diminish the danger, and the words 'reasonable control' in section 28 give the power to meet just such conditions.

"It follows, therefore, that the provisions of the ordinance which contravene the State law must be held to be invalid and void."

The right to reasonable control in this limited sense was upheld in *City of Dearborn* v. *Sugden & Sivier, Inc.,* 343 Mich 257. Justice CARR, writing for the Court, there upheld the right of a city to enforce a city ordinance which contained, in substance, identical provisions of the State motor vehicle code in regard to weight restrictions on truck traffic, even

though the violation was on a trunk-line highway within the city, on the theory that a municipality under article 8, §§ 27, 28, of the State Constitution (1908) retains reasonable control of its highways. This control has been defined as such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto. The control under the ordinance by the city could not be said to be in conflict with this definition in view of the fact that its provisions were, in substance, identical.

In the case of *Allen* v. *State Highway Commissioner,* 338 Mich 407, Justice REID discussed the subject of reasonable control in a case where the right of a city to erect parking meters on a street, which was also US–16, a State trunk line, was questioned. The city installed parking meters. The highway commissioner and a commissioner of the State police under CL 1948, § 750.498 (Stat Ann 1954 Rev § 28.766) and PA 1949, No 300, § 675(d), as amended by PA 1951, No 47 (CLS 1952, § 257.625[d], Stat Ann 1952 Rev § 9.2375[d]), ordered the signs removed and parking prohibited on the north half of State trunk-line highway US–16. The city of East Lansing relied upon article 8, §§ 27, 28, of the Constitution of 1908, contending that reasonable control of its streets prohibited the State from taking action under the statute. Justice REID, speaking for the Court, cited the case of *Allen* v. *Rogers,* 246 Mich 501, and quoted from syllabus 5 as follows (p 415):

" 'The reasonable control of streets reserved to cities under the Constitution (article 8, § 28) does not give them exclusive control, preventing the State from assuming any control over State trunk-line highways running through cities.' "

Justice REID, continuing, said (pp 415, 416):

"The right to reasonable control of their streets is not a gift of an arbitrary prerogative to the cities, villages and townships. The reasonableness of the city's control of its streets is not to be within the final determination by the city in all cases, for that in practical effect could erase the word 'reasonable' from the constitutional provision."

It was therein held that the State by the establishment of a trunk-line highway which included the street in question in East Lansing, thereby assumed an obligation to the people of the State in general to see to it that the street in question, together with the trunk line in general, was so maintained and controlled as to be reasonably available for the flow of traffic.

Justice EDWARD M. SHARPE, in a concurring opinion, said (p 417):

"That part of US–16 in controversy here became a part of Ingham county road system on September 10, 1924, and on the same date it was established as a State trunk-line highway. By such action US–16 not only was a city street but also a part of the State highway systems."

Dort highway was constructed in 1926 and became a part of the State trunk-line system at that time.

In *Allen* v. *Rogers,* 246 Mich 501, this Court, in discussing the question of reasonable control, and article 8, §§ 27, 28, of the Constitution of 1908, said (p 509):

"The State is committed to a comprehensive system of highway development which requires that it should extend its trunk-line roads through cities. The legislature has undertaken to bring this about by providing for cooperation between the cities and the highway department. Cooperation by the cities is not compulsory, but the proposition is made so attractive that, for financial reasons and for the general public good, cities are willing to cooperate. This

they may do without relinquishing their constitutional right to a reasonable control of their streets."

It is apparent from the discussion of the above cases that the constitutional provisions mentioned do not reserve to the municipality complete control over streets and highways within a municipality, but that reasonable control is reserved. This reasonable control is limited by definition to such control as cannot be said to be unreasonable and inconsistent with regulations that have been established, or may be established, by the State itself. Therefore, it cannot be said that State legislation granting duty of maintenance to the State highway commissioner on State trunk-line highways within the municipal limits of a city or village offends sections 27 and 28 of article 8 of the Constitution.

CL 1948, § 250.38 (Stat Ann § 9.888) contained the following language:

"It shall be the duty of the State highway commissioner to see that all trunk-line highways are properly maintained in suitable condition for public travel."

CLS 1956, § 250.31 (Stat Ann 1955 Cum Supp § 9.881) read, in part, as follows:

"All trunk-line highways now or hereafter established as provided by law, shall hereafter be constructed, maintained and improved in accordance with the provisions hereof under the direction, supervision and control of the State highway commissioner. Said commissioner is hereby authorized and directed to make surveys and proper plans and specifications and take charge of the construction and maintenance aforesaid."

It is stipulated that Dort highway is a State trunk-line highway, and the above-mentioned statutes place a duty on the State highway commissioner to maintain all trunk-line highways. From a reading of

CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591) it is apparent that the words "whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair" could not refer to State trunk-line highways within the limits of villages or cities. Courts endeavor to reconcile even conflicting sections of statutes and make them work if possible.

In *Wayne County* v. *Auditor General,* 250 Mich 227, the Court quoted with approval from 2 Lewis' Sutherland Statutory Construction (2d ed), pp 844, 845, as follows (p 234):

" 'All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes *in pari materia,* are treated prospectively and construed together as though they constituted one act. * * * They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment.' "

See, also, *Malonny* v. *Mahar,* 1 Mich 26; *People, ex rel. Hughes,* v. *May,* 3 Mich 598; *People, ex rel. Whipple,* v. *Saginaw Circuit Judge,* 26 Mich 342; *In re Kreiner,* 156 Mich 296.

Reading together the 2 above statutes it is apparent that the legislature intended by transferring to the State highway commissioner the authority over and duty to repair and maintain State trunk-line highways to relieve the city or village of liability under CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), insofar as it applies to State trunk-line highways.

This construction has, in effect, been supported by legislative amendment in 1957.[*]

The only question left for discussion in this case is: Was the city of Flint in performing maintenance work on Dort highway within the corporate limits of the city of Flint, pursuant to a contract therefor with the State highway commissioner, fulfilling a governmental function and, therefore, immune from liability?

Defendant appellant contends that it was fulfilling the governmental function of the State highway commissioner, whose duty it is to maintain State trunk-line highways, and, therefore, it could not be liable for negligence in the performance under its contract.

The contract entered into by defendant appellant and the State highway commissioner is similar to the contract reviewed by this Court in *Johnson v. Ontonogan Board of County Road Commissioners,* 253 Mich 465, wherein we said (pp 469–471):

"Defendant herein at the time of the accident was operating under a cost-plus contract with the State highway commissioner. The contract contains 2 paragraphs providing for actual reimbursement to defendant for expenditures incurred in the work. The third paragraph provides fixed rentals for use of equipment furnished and used by defendant. The fourth paragraph contains the following provision: 'to pay to said party of the second part as an overhead and supervision charge an amount equal to 5.5% of the total paid under paragraphs 1, 2 and 3 above, plus an amount equal to 5.5% of the cost to the State of materials purchased by it and furnished to the second party for use in the performance of this contract.' Plaintiff contends that by reason of the provisions in the fourth paragraph it must be

[*] CLS 1956, § 247.651; and CL 1948, §§ 247.651a, 247.651b, as added by PA 1957, No 262 (Stat Ann 1958 Rev §§ 9.1097[1], 9.1097 [1a], 9.1097[1b]).

concluded that a profit would result to the defendant from performance of work under this contract; and that by reason thereof defendant should be held to be engaged in a commercial enterprise rather than in the performance of a governmental function.

"This contract in several particulars is decidedly unlike those usually consummated with independent contractors. It requires the defendant herein to 'appoint a superintendent of maintenance satisfactory to the party of the first part, who shall * * * perform said work at the time and in the manner specified by the party of the first part.' It also requires defendant to 'employ only workmen skilled in their various duties;' and further, defendant agrees in this contract upon request of the State highway commissioner to discharge any person found to be incompetent or negligent in the performance of his work and not to re-employ such person except with the written consent of the State highway commissioner. Also the wages to be paid and the materials to be purchased are to be such as are agreed to by the State highway commissioner; and by his power of approval reserved in the contract the commissioner controls the type and number of units of equipment to be furnished by the defendant for this work. We think these features of the contract quite conclusively indicate that the defendant board of road commissioners is only a governmental agency in the hands of the State highway commissioner used in the discharge of certain governmental duties, *i.e.*, the repair and maintenance of State highways. * * *

"We find nothing in this record indicating that defendant was engaged in an enterprise which inured especially to its own corporate benefit. Instead, all of its activities had to do with the construction or maintenance of the public highways, which is the performance of a public duty."

In the instant case the city was performing the same duties as the county was in the *Johnson Case,* and the Court therein held the county was perform-.

ing purely a governmental function, and that it was performing it on behalf of the State highway commissioner, that is, the repair and maintenance of a State trunk-line highway. The city of Flint was performing a governmental function in maintaining Dort highway at the time and place in question in this suit, which it had no duty to perform except under the contract, it being the responsibility of the State to maintain such highway in a reasonably safe condition. In performing the functions of the State highway commissioner, the city is merely an arm of the State. Governmental immunity still exists as to the State highway commissioner. The motion for judgment *non obstante veredicto* should have been granted.

Judgment of the lower court should hereby be reversed and the case be remanded to the lower court for entry of a judgment *non obstante veredicto*. Costs to defendant.

Dethmers, C. J., and Carr, JJ., concurred with Kavanagh, J.

Kelly, J. (*for affirmance*). The jury finding that plaintiff suffered injuries because the city of Flint negligently failed to provide barricades around holes in Dort highway, which the city was repairing, is not challenged by appellant city. Appellant endeavors to escape responsibility because the road it was repairing was a State trunk-line highway within its corporate limits.

Appellant's brief contains the following statement:

"This is a case of first impression in this Court and as the trial court said in its opinion, 'whichever way the court decides this case there will be gross inconsistencies.' "

Dort highway, traversing Flint in a northerly and southerly direction, is used not only by Flint motorists but by a large number of Detroit metropolitan motorists seeking recreation in Michigan's North.

For over 60 years our legislature has held cities accountable to those who travel their streets, as is evidenced by the following quotation from this Court's decision in *Southwell* v. *City of Detroit* (1889), 74 Mich 438, 441, 442:

"It was held in *Detroit* v. *Blackeby,* 21 Mich 84 (4 Am Rep 450), that the city of Detroit was not liable in its corporate capacity for the negligent acts of its officers which constituted nonfeasance only. Since the decision in that case the legislature has passed an act laying a duty upon municipalities to keep the streets under their control in repair. Section 4 of this act reads as follows:

" 'It is hereby made the duty of townships, villages, cities, or corporations to keep in good repair, so that they shall be safe and convenient for public travel at all times, all public highways, streets, bridges, crosswalks, and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel.' How Stat § 1445."

A comparison of our present statute with the statute quoted above discloses that the only change is that where the statute originally held cities to a responsibility to keep their streets in "good repair," it now requires the cities to keep their streets in "reasonable repair."*

Justice KAVANAGH quotes from decisions of this Court dealing with cities' rights to reasonable control of their streets as provided in the Constitution. These decisions do not give us the answer to the question presented in this appeal because there is no dispute between the city of Flint and the State of

---

* See CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591).—REPORTER.

Michigan. The city sought and obtained the State's consent to repair the highway at the State's cost.

Cities have successfully, with this Court's approval, resisted all efforts by the State highway commissioner to take exclusive command in deciding how traffic should flow through the respective cities on State trunk-line highways.

The claim is not made by appellant, nor by Justice KAVANAGH, that the legislature expressly and definitely brought to an end the 65-year legislative mandate to cities, namely, to protect the motorist as he or she travels over the cities' streets.

Justice KAVANAGH asks in his opinion that the trial court's refusal to enter judgment notwithstanding the jury's award of $2,500 to plaintiff be reversed, because he reads into PA 1919, No 19, as amended (CL 1948 and CLS 1956, § 250.31 *et seq.* [Stat Ann and Stat Ann 1955 Cum Supp § 9.881 *et seq.*]), a legislative intent to absolve cities for their negligent acts of commission and omission in not using reasonable care and means to protect motorists passing through cities on State trunk-line highways, and he states that "this construction has, in effect, been supported by legislative amendment. * * * CLS 1956, § 247.651 and CL 1948, § 247.651a, as added by PA 1957, No 262 (Stat Ann 1958 Rev §§ 9.1097[1], 9.1097[1a])."

In *Allen* v. *Rogers,* 246 Mich 501, 508, 509, this Court, 10 years after the enactment of PA 1919, No 19, stated:

"But it is further urged that the Constitution gives to cities exclusive control of their streets and that fact prevents the State from assuming any control over them. The Constitution does not so read:

" 'The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, vil-

lages and townships.' Section 28, art 8, Michigan Constitution of 1908.

"This section of the Constitution was construed by the Court in *People* v. *McGraw,* 184 Mich 233, 237, 238. After quoting from the proceedings and debates of the constitutional convention, it was said:

" 'From this, and also from reading the debates with reference to the insertion of the word "reasonable," it is clear that it was not the intention of the framers of the Constitution to deprive absolutely the State itself of control over its highways and bridges in the cities, villages, and townships.  *  *  *  In other words, the municipality retains *reasonable control* of its highways, which is such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto.'

"The State is committed to a comprehensive system of highway development which requires that it should extend its trunk-line roads through cities. The legislature has undertaken to bring this about by providing for cooperation between the cities and the highway department. Cooperation by the cities is not compulsory, but the proposition is made so attractive that, for financial reasons and for the general public good, cities are willing to cooperate. This they may do without relinquishing their constitutional right to a reasonable control of their streets."

The legislature, undoubtedly, was aware of the following facts, of which this Court will take judicial notice: (1) the large number of cities traversed by State trunk lines; (2) that said trunk lines create as great or greater traffic problems than are created on other streets within a city's boundaries; (3) that while a large percentage of the motorists are not taxpayers or residents of the city, said trunk lines are extensively used by residents of the city; (4) that the State highway commissioner has no representa-

tive residing or working in numerous cities traversed by trunk lines.

A State functions through its numerous officials on township, village, city and county levels, and it is self-evident that this State cannot meet its responsibilities to assist and protect motorists without the combined efforts of those on local levels.

We draw no distinction between the rights of the citizen of Flint, driving on a State trunk line within the limits of Flint, and motorists who come to Flint's boundaries from distant points. We reiterate a statement from a decision of the United States supreme court in *Detroit* v. *Osborne* (1890), 135 US 492, 499 (10 S Ct 1012, 34 L ed 260):

"The city of Detroit, in the discharge of its public duty in respect to keeping the streets and sidewalks in repair, is under no higher or different obligations to a citizen of Ohio than to one of the State of Michigan."

I cannot agree with my Brother's conclusion that the legislature has excused the city from liability to motorists traveling on a State trunk line within the city's limits.

I prefer to construe the statute to mean that the legislature, realizing the wear and tear on the pavement of streets within cities which carry the so-called load of "through traffic," decided that the State should bear the expense of maintaining and keeping such streets within the cities' boundaries in repair. I cannot construe, however, a legislative intent to mean that while the legislature was holding the cities to a definite responsibility of using reasonable care for the motorists on the least traveled of their corporate streets, that it completely excused the cities from any such responsibility toward the problem street, namely, the State trunk line passing through the respective cities.

Six years after the legislature enacted PA 1919, No 19, it enacted PA 1925, No 17 (CL 1948, § 250.61 *et seq.* [Stat Ann 1958 Rev § 9.901 *et seq.*]), relieving counties and townships from all legal liability in regard to State trunk lines traversing townships or counties, as is evidenced by the following:

"On and after the 1st day of January, A.D., 1926, the cost of constructing, improving and maintaining trunk-line highways shall be met entirely by the State, and the counties and townships shall thereafter be relieved of all expenses and *legal liabilities in connection therewith.*"

No act, including PA 1957, No 262, excused cities from legal liability in respect to State trunk lines within city limits.

Until such time that the legislature includes cities with townships and counties in exemption from legal responsibility, I can only conclude the legislature did not intend the construction my Brother places on PA 1919, No 19.

I cannot agree that Justice KAVANAGH's construction of PA 1919, No 19, has in effect been supported by the legislative amendment in 1957. Justice KAVANAGH refers to CLS 1956, § 247.651 and section 1a of the 1957 act (CL 1948, § 247.651a) which establish that the State trunk-line system consists of all roads, streets and highways either located within or outside the limits of incorporated cities and villages; that additions to and deletions from the State highway system may be made from time to time in manner prescribed by law; that said trunk line shall be constructed, maintained and improved in accordance with the provisions of the act under the direction, supervision and control of the State highway commissioner.

The following sections of this same 1957 act are not discussed in the opinion from which I dissent,

but I believe they should be considered in determining legislative intent. I refer to PA 1957, No 262, §§ 1b, 1c and 18i. Section 1b provides:

"The State highway department shall bear the entire cost of maintaining, in accordance with standards and specifications of the department, all State trunk-line highways including such highways within incorporated cities and villages except that the cost of maintaining additional width for local purposes as provided in section 1c of this act shall be borne by the city or village. For the purposes of this act, maintaining of State trunk-line highways shall include, by way of enumeration but not limitation, snow removal, street cleaning and drainage, seal coating, patching and ordinary repairs, erection and maintenance of traffic signs and markings and the trunk-line share of the erection and maintenance of traffic signals, but shall not include street lighting, resurfacing, new curb and gutter structures for widening." (CL 1948, § 247.651b [Stat Ann 1958 Rev § 9.1097(1b)].)

Section 1c provides:

"The State highway department shall bear the cost of opening, widening and improving, including construction and reconstruction, in accordance with standards and specifications of the department, all State trunk-line highways, subject to the following provisions:

"(a) Incorporated cities and villages shall participate with the State highway department in the cost of opening, widening and improving, including construction and reconstruction of State trunk-line highways within cities and villages to which may be added, subject to the approval of the State highway commissioner, streets that are connecting links of trunk-line highways or streets as are hereafter made connecting links of trunk-line highways, according to the following schedule subject to the definition of population as provided in section 13 of this act:

"(1) In cities and villages having a population of 50,000 or more, 25% of the cost shall be borne by the city or village, and 75% by the State highway department;

"(2) In cities and villages having a population of 40,000 or more and less than 50,000 22–1/2% of the cost shall be borne by the city or village, and 77–1/2% by the State highway department;

"(3) In cities and villages having a population of 30,000 or more and less than 40,000, 17–1/2% of the cost shall be borne by the city or village, and 82–1/2% by the State highway department;

"(4) In cities and villages having a population of less than 30,000, the State highway department shall bear the entire cost.

"(b) For the purposes of this act, opening, widening and improving, including construction and reconstruction, of State trunk-line highways, shall include, but not by way of limitation, the cost of right-of-way; the cost of removal and replacement of sidewalks, street lighting, curbing, where such removal and replacement is made necessary by construction or reconstruction of a trunk-line highway; and the cost of bridges and structures, including that part of the cost of grade separation structures not paid by the railroad companies.

"(c) In any city or village, the width of a State trunk-line highway shall be the width required to serve anticipated future traffic needs for a 20-year period as determined by a State highway department transportation survey, which width, except as prescribed below, shall not be less than (1) the currently accepted standards prescribed for a 4-lane highway, (2) such width as may be built on the same trunk-line route immediately beyond and adjacent to either legal boundary of the city or village, or (3) on trunk lines eligible for Federal highway funds, such width as may be prescribed by the Federal government, whichever width is greater. The State highway department and the governing body of a city or village by mutual agreement may determine

that the width of a State trunk-line highway shall be less than the width prescribed above.

"(d) If any city or village shall desire to widen a State trunk-line highway for local purposes beyond the width prescribed above, the entire cost of the extra width, less any Federal highway funds which may be allocated to the portion of the project by the highway department, shall be borne by the city or village." (CL 1948, § 247.651c [Stat Ann 1958 Rev § 9.1097(1c)].)

Section 18i reads:

"The provisions of this act shall be construed as cumulative authority for the exercise of the bonding powers herein granted and shall not be construed to repeal any existing laws with respect thereto, it being the purpose and intention of this act to create full and complete additional and alternate methods and means for the exercise of such powers. The powers conferred by this act shall not be affected or limited by any other statute or by any charter, except as otherwise herein provided." (CL 1948, § 247.668i [Stat Ann 1958 Rev § 9.1097(18i)].)

The 1957 amendment (PA 1957, No 262) reaffirms the 1929 decision of *Allen* v. *Rogers, supra,* that while the State will bear the cost of additional wear and tear because of through traffic on trunk lines through city streets, the cities' duty to use reasonable care to provide and protect motorists as they pass through those streets has not been eliminated.

Consequently, I cite with approval and in complete agreement the following from the opinion of Hon. Philip Elliott, circuit judge of the county of Genesee:

"Under the statutes above quoted there is still a duty on the part of the city to keep in reasonable repair 'all public highways, streets (et cetera) which are within their jurisdiction and under their care and control, and which are open to public travel.' CL 1948, § 242.3 (Stat Ann 1958 Rev § 9.593). The

court does not believe that any of the statutes cited by defendants removes this duty, nor can the city avoid it by entering into a contract with the State highway commissioner. If the necessary elements of negligence by employees of the city are proven, one who is injured thereby on a trunk-line highway can recover even if the city has a contract with the State highway commissioner for full reimbursement of the cost. Such a one who is so injured comes within the terms of liability set forth in CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591). The motion for judgment notwithstanding the verdict is denied."

Affirmed. Costs to appellee.

SMITH, BLACK, and VOELKER, JJ., concurred with KELLY, J.

EDWARDS, J. (*for reversal*). I concur with Mr. Justice KAVANAGH's interpretation of the confused and conflicting statutes which this case requires us to construe. This compels reluctant concurrence likewise in reversal under the present holding of this Court on the doctrine of governmental immunity. See writer's opinions in *Richards* v. *Birmingham School District,* 348 Mich 490; and *Penix* v. *City of St. Johns,* 354 Mich 259.