## PERE MARQUETTE RAILROAD CO. v. UNITED STATES GYPSUM CO.

1. Eminent Domain—Railroads—Condemnation Proceedings—Public Use—Necessity.

   To entitle a railroad company to condemn land, the use for which it is required must be a public use, and the necessity for its taking a public necessity.

2. Same—Burden of Proof.

   Under section 6245, 2 Comp. Laws, when the allegation in a petition for condemnation that the taking is necessary for the public use is traversed, the burden is upon the petitioner to prove the public use and necessity.

3. Same—Public Use—Necessity—Evidence—Sufficiency.

   The building of a spur track to accommodate a single plaster mill, the products of which are not shown to be required for public use, and of which it is not shown that they cannot reach market in some other manner, does not appear to be a matter of such public necessity as to support condemnation proceedings for right of way, more especially where a contract between the railroad company and the mill owner obligates the mill owner to bear the entire expense of the proceedings and the building of the track, and places the track when built under his control.

Certiorari to the probate court of Kent; Jewell, J. Submitted May 11, 1908. (Docket No. 105.) Decided September 29, 1908.

Condemnation proceedings by the Pere Marquette Railroad Company against the United States Gypsum Company and others. There was an order dismissing the petition for want of jurisdiction, and petitioner brings certiorari. Affirmed.

*Charles E. Ward*, for appellant.

*Butterfield & Keeney* and *Albert N. Eastman*, for appellees.

After the decision of the case of *United States Gypsum Co.* v. *Kent Circuit Judge,* 150 Mich. 668, and by special permission of the court granted in that decision, the case is now before us by writ of certiorari from the probate court. The petitioner filed its petition in the probate court for the condemnation of a right of way across the lands of the defendant gypsum company to land owned by William F. Dummer. Dummer and his wife were made parties because Mr. Dummer claimed ownership of a right of way over the proposed line. The petition is correct in form, and contains the following allegations:

"That the property so particularly described in this petition is required for the purpose of constructing, operating, or repairing your petitioner's said railroad or its appurtenances, viz.: For the purpose of building, maintaining, and operating a spur track from your petitioner's main line to develop business along your petitioner's line of road. That the taking of the lands and property above particularly described is necessary for the public use."

The Federal Trust & Savings Bank and the German-American Bank are made parties as mortgagees of the defendants' road and property. Dummer and his wife filed their consent to the proposed condemnation. The right of way sought to be condemned is entirely on the land of the gypsum company. The petitioner proposes to take a strip 50 feet wide across its land, containing valuable deposits. The gypsum company and the mortgagees answered, denying the jurisdiction of the court, and that the land was required for a public use or by public necessity.

In *United States Gypsum Co.* v. *Kent Circuit Judge,* supra, will be found a quotation from the answer, the finding of the probate judge, and the decree dismissing the petition. Upon the hearing, preliminary inquiry was had upon the question of the jurisdiction, and the authority of the court to condemn the lands and proofs were taken thereon. Petitioner introduced the record of a

resolution from the board of directors of the petitioner, in which "it was resolved that it is expedient and necessary for the development of business along the line of the Pere Marquette Railroad Company that a spur track be constructed along such route as shall be selected by the chief engineer from the main line near Grandville to the plaster mills near the northwest corner of section 20, of town 6 north, of range 12 west."

Petitioner's counsel then called Mr. Keeney, one of the attorneys for the respondent, to the stand to prove negotiations for the purchase of the right of way. A letter was produced, written by the attorney for the petitioner, directed to Messrs. Butterfield & Keeney, attorneys for the gypsum company, offering $400 per acre for a right of way 50 feet wide across the land, containing the statement that it would not permit the United States Gypsum Company to remove the rock under the right of way, unless it could be done without injury to the railroad track, and a letter on the part of the gypsum company declining to accept the offer. On cross-examination, Mr. Keeney testified that he had a conversation with the attorney representing the railroad company, in regard to this right of way, in which Mr. Keeney informed said attorney that he did not think Mr. Dummer had any intention of good faith to operate his mills, and that the attorney for the petitioner replied that he did not believe Mr. Dummer did intend to run his mills, "at least so that they could get enough business out of it to warrant their putting in a side track, and for that reason they had been unwilling to do it, and he did not think there was any probability that they would enter into any enterprise of that kind."

A few weeks after this conversation, the same attorney informed Mr. Keeney that circumstances had changed, and that an agreement had been made between Mr. Dummer and the Pere Marquette, under which Mr. Dummer was to pay all the expenses of putting in a side track and the condemnation proceedings, and that the railroad company was to institute the same. Thereupon followed the

letters above referred to.   Upon this showing the petitioner rested its case.

The respondents then introduced the agreement which had been made between Mr. Dummer and the railroad company, the material parts of which are as follows:

"Agreement made this 23d day of September, A. D. 1905, between the Pere Marquette Railroad Company, a corporation, as party of the first part, hereinafter called the 'Pere Marquette,' and William F. Dummer, of Lake Geneva, Wisconsin, as party of the second part:

"Whereas, the party of the second part is the owner of land containing deposits of gypsum and a mill for converting such deposits into plaster or stucco, situated near the village of Grandville, which mill formerly had but is now without railroad facilities.   The Pere Marquette is the owner of a railroad passing through Grandville, and the party of the second part desires to obtain railroad facilities for his said property:

"Now, therefore, in consideration of the premises and of the mutual promises herein contained, and other valuable considerations, it is hereby agreed as follows:

"(1) The Pere Marquette agrees to have instituted by an attorney acceptable to the party of the second part, proceedings for the condemnation of a right of way across sections 17 and 18 substantially as shown on the annexed blueprint, such right of way not to exceed a strip of land 50 feet wide, being 25 feet on each side of the center line of such right of way, and both branches thereof where the track divides near said mill, and to prosecute said proceedings diligently, with a view of obtaining the said right of way at the earliest practicable date.   No more land shall be condemned for such right of way than is reasonably necessary for the purposes of this agreement.

"(2) The party of the second part agrees to pay all the costs, charges, and expenses attending the commencement and prosecution of said proceedings, except for the services of the salaried officers and employés of the Pere Marquette who may be engaged in connection with said proceedings, who shall render all necessary assistance in connection with a local attorney who shall be employed, such local attorney to be paid by the party of the second part, and also to pay the amounts awarded as damages and compensation to the owners of said right of way, together with all costs awarded in the same connection,

such award and costs to be paid within the time allowed by the statute. The party of the second part shall have the right to appeal in the name of the Pere Marquette from such award, the expenses of such appeal to be paid by said party of the second part. The party of the second part further agrees to pay to the Pere Marquette in advance of the construction of said tracks the sum of five thousand fifty-nine dollars and sixty-six cents, being the estimated total cost of the material and labor to be furnished for said track by the Pere Marquette, and the Pere Marquette agrees to refund in cash to the party of the second part, upon the completion of such track, any part of the said sums not actually expended in the construction of such track, and to refund the balance of said sum to the second party at the rate of three dollars per car on each car load of freight shipped in or out over said track via the lines of the Pere Marquette or as routed by it over other lines. Settlements to be made quarterly on the last day of March, June, September, and December of each year, and the payment of such refunds shall cease when the total of such refunds shall equal the net amount advanced by the second party to the Pere Marquette for the cost of material and labor furnished by the Pere Marquette in the construction of such track. In case such condemnation proceedings shall fail and such track shall not be constructed, the Pere Marquette shall refund in cash to the second party the whole amount so advanced, less the amount of the actual expenses incurred by the Pere Marquette prior to the failure of such condemnation proceedings. It is expressly understood that the refunds above provided for shall not apply to or be allowed upon any amounts paid by the second party on account of damages, compensation, costs, charges, and expenses in connection with the condemnation proceedings herein provided for.

"(3) The Pere Marquette agrees that as soon as it is authorized to enter upon the said right of way, either by the consent of the owners thereof or by the proceedings aforesaid, it will do the necessary grading and furnish the necessary rails and material, and construct with all reasonable diligence, at its own expense, a track over such right of way to the property of the second party aforesaid.

"(4) The said side track, including ties, rails, switches, and crossing material, if any, shall be and remain the property of the Pere Marquette and its lessee and assigns,

and under its exclusive control except as herein otherwise stated; and the Pere Marquette and its lessee and assigns shall have the right to use the whole or any part of said track for other business than that of the second party, when it will not interfere with the second party's business, without any allowance therefor to the second party, and without restriction except as herein stated.

"(5) One of the principal inducements for the construction of said side track by the Pere Marquette is to secure it, its lessee and assigns, as much as possible of the freight to be shipped in connection with the business carried on by the second party along or near said proposed side track, and, in consideration of the agreements herein contained, the second party hereby agrees that from the date of completion of such track all freight shipped by the second party in connection with said business (and all freight shipped to him so far as he controls the shipment thereof) shall be shipped over the Pere Marquette Railroad whenever—either alone or in connection with other lines—it or its lessee or assigns shall be willing to carry the same at rates equally favorable with those actually offered by another carrier. The second party further agrees that all freight, the destination or place of shipment of which shall be off the lines of the Pere Marquette Railroad, shall, so far as the second party may be able to control the same, be so routed as to give the Pere Marquette Railroad the benefit of the longest possible haul over its lines, provided the service via the Pere Marquette and its connections is equally favorable, including time of delivery, to that offered via other routes. It is further agreed that the shipments from and to said mill shall be given the same rates as are given shipments from or to other mills on the same spur track or in the same locality."
\* \* \*

[Paragraphs 6 and 7 relate to insurance and the building of structures, and are unimportant.]

"(8) Said side track shall be maintained by the Pere Marquette, and the cost of such maintenance shall be borne by the Pere Marquette.

"(9) In case the mill on the property of the party of the second part shall cease to be operated for a period of one year, the Pere Marquette shall have the right to terminate this agreement after sixty days' notice in writing to the second party, unless the second party shall before the termination of said sixty days pay to the Pere Mar-

quette an amount equal to interest at 5 per cent. from the time said mill ceased to be operated to the date of such payment on the amount of refunds paid to the second party by the Pere Marquette under the provisions of the second paragraph hereof.  In case the second party shall pay to the Pere Marquette interest on the amount of refunds as aforesaid, this agreement shall be extended indefinitely, subject to termination by notice and renewal by payment of interest as above provided, in case said mill shall then cease to be operated for the period of one year.  For the purpose of this agreement said mill shall be deemed to have ceased to be operated at the commencement of any period of 365 consecutive days in which said mill shall not have been actually engaged in the manufacture of gypsum products to at least one-half of its full capacity for at least twenty days.  In case of the destruction of said mill by fire, this clause shall not be operative or apply until said party of the second part shall have had a reasonable time within which to rebuild said mill.  In case this agreement shall be terminated as above provided, the Pere Marquette shall have the right to enter upon the property of the second party and remove said track and connections, but in such case the Pere Marquette shall convey to the second party the legal title to the right of way for said track obtained at the expense of the second party under the provisions of the second paragraph hereof.  So long as this agreement remains in force, the Pere Marquette shall have the right to maintain and use said track pursuant to this agreement.

" (10) This agreement shall be binding upon, and enforceable by, the parties hereto and their successors, assigns, and legal representatives, and the successors in interest to the respective parties hereto shall succeed to all the rights and liabilities of their respective predecessors in interest."

The respondent also gave testimony showing the value of the deposits under the proposed right of way and the use for which the surface of the land was then mainly occupied where the right of way would go.  The testimony upon these last two points is immaterial.  The above comprises all the testimony introduced upon the hearing material for consideration.

GRANT, C. J. (*after stating the facts*).  Counsel for

the petitioner rested his case upon the proposition that the statute casts the burden of proof upon the respondent to disprove the facts stated in the petition.   The statute provides:

"On presenting such petition to said court or the judge thereof at chambers, with proof of service of a copy thereof and due notice as aforesaid, all persons whose estate or interests are to be affected by the proceedings may show cause against the prayer of the petition and may disprove any of the facts alleged therein, and said court or judge shall hear the proofs and allegations of the parties and if no sufficient cause is shown against granting the prayer of the petition, said court or judge shall make an order appointing three disinterested and competent freeholders as commissioners to ascertain and determine the necessity for taking such lands, franchises or other property and to appraise and determine the damage or compensation to be allowed to the owners and persons interested," etc.   2 Comp. Laws, § 6245.

The use mentioned in the statute must be a public use, and the necessity a public necessity.   The resolution of the board of directors in New York city made no reference to public use or public necessity, but only to the expediency and necessity of developing its own business.   There is nothing in any of the proofs offered by the petitioner to indicate a public use.   The only allegation in the petition upon this point is "that the taking of the lands and property above particularly described is necessary for the public use."   It is repugnant to common sense and justice that the mere allegation that one's land is necessarily required for the public use by a corporation is sufficient to cast upon him the burden of showing why it should not be taken, and to show those facts, many of which are peculiarly within the knowledge of the petitioner.   The statute provides for framing an issue.   When the allegations are admitted, or, as held by some authorities, not denied, proof of the facts alleged is not essential; but, where the answer expressly traverses them, the effect of the statute simply is to put the petitioner to its proofs.

This is nearly the universal holding of the courts. The learned counsel for the petitioner cites but one case to the contrary. *In re New York Bridge Co.*, 67 Barb. (N. Y.) 295. Not only was this case not followed by the courts of New York, but was overruled by the following cases. *In re New York Cent. R. Co.*, 66 N. Y. 407; *Rochester R. Co.* v. *Robinson*, 133 N. Y. 242; 2 Lewis on Eminent Domain (2d Ed.), § 397, note 78. The same is held in *Carolina, etc., R. Co.* v. *Manufacturing Co.*, 132 N. C. 644; *Tracy* v. *Railroad Co.*, 80 Ky. 259; *Wisconsin Cent. R. Co.* v. *Cornell University*, 52 Wis. 537.

This proposed side track terminates at the line between the lands of the Gypsum Company and Mr. Dummer; at least there is nothing in the petition or proofs to show that it is to extend further. There is no allegation in the petition nor showing by petitioner's proofs that Mr. Dummer is at the present time engaged in any business in which the public is interested, or that the products of his manufactory are required for public use, or that any products he may manufacture cannot reach the market or the railroad in other ways. There is nothing in this case to indicate that the proposed side track can or will be used by anyone except Mr. Dummer. As is well stated by counsel for the respondents, there is nothing to indicate that it would serve any public use, unless the mere fact that it accommodates Mr. Dummer's mill makes the use a public one. Petitioner's entire case is barren of any allegation of facts or proofs upon which the court could base a finding that the property of the defendant is necessary for a public use.

If we resort to the contract and the statements made by the attorney for the petitioner, as testified to by Mr. Keeney and not contradicted, not only do we not find any evidence of a public use, but we find that the railroad company did not consider that the land of the gypsum company was required for public use, but for Mr. Dummer's own interests, and that it refused to take any pro-

ceedings contemplated by the statute until Mr. Dummer had made a contract with it to institute proceedings in the name of the railroad company, to pay all the expenses, to control the litigation, and to provide that his own attorney, rather than the attorney for the railroad company, should institute and manage the litigation.   Under some of the authorities cited in behalf of the petitioner, it is correctly held, without doubt, that agreements between railroad companies and manufacturers that the manufacturers will pay part or even all of the expenses of the condemnation and of the award, are not conclusive against the public use and the public character of the proposed improvements. *Hairston* v. *Railway Co.*, 208 U. S. 598; *Chicago Dock & Canal Co.* v. *Garrity*, 115 Ill. 155; *St. Louis, etc., R. Co.* v. *Petty*, 57 Ark. 359 (20 L. R. A. 434).   The public character of the work may be the same, although it is assisted by private contributions.   It must, however, be shown that the work will contribute to the public interests and enhance the financial welfare of the people.

This court held in *Mansfield, etc., R. Co.* v. *Clark*, 23 Mich. 519, that the finding by a jury that "it is necessary that said real estate and property should be taken for the purposes of said company" is not a finding of necessity for the public use.   Neither was a finding by the jury "that it was and is necessary to take and use said land for the purpose of operating and constructing said railroad by said company" held a sufficient finding of the necessity to take the property for the public use.   *Grand Rapids, etc., R. Co.* v. *Van Driele*, 24 Mich. 409. There are many authorities holding that statutes of condemnation do not apply to a siding for the accommodation of a single manufactory.   *Pittsburg, etc., R. Co.* v. *Iron Works*, 31 W. Va. 710 (2 L. R. A. 680); *Chicago, etc., R. Co.* v. *Wiltse*, 116 Ill. 449; *Kyle* v. *Railway Co.*, 3 Tex. App. (Civ. Cas.) 518 (4 L. R. A. 275); *Weidenfeld* v. *Railroad Co.*, 48 Fed. 615; *In re Niagara Falls, etc., R. Co.*, 108 N. Y. 375.

The contract between Dummer and the petitioner, con-

sidered as a whole, shows conclusively, in my judgment, that this proposed side track is for the sole benefit of Mr. Dummer, and to increase the business of the petitioner. This is especially shown by two paragraphs, to which I now refer. In paragraph 4 it is agreed:

"The Pere Marquette and its lessee and assigns shall have the right to use the whole or any part of said track for other business than that of the second party when it will not interfere with the second party's business, without any allowance therefor to the second party, and without restriction except as herein stated."

Can a side track or any part of a railroad be intended for the public use which one private party can control to the exclusion of all the others? The question answers itself. In paragraph 9 it is provided that, if Mr. Dummer shall cease to operate his mill for a year, the railroad company may terminate the agreement, and, if it does, it "shall convey to the second party [Dummer] the legal title to the right of way for said track obtained at the expense of the second party under the provisions of the second paragraph hereof." It seems to be contended on behalf of the petitioner that this does not mean the right of way across the land of the gypsum company. It is difficult to understand what else it does refer to, as the proposed side track is entirely on the gypsum company's land.

We think that the probate court reached a correct conclusion; and its decree is affirmed, with costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER. JJ., concurred.