CITY OF LANSING v EDWARD ROSE REALTY, INC

Docket Nos. 116531, 116532. Submitted May 14, 1991, at Lansing. Decided January 21, 1992, at 9:50 A.M. Leave to appeal sought.

The City of Lansing brought an action in the Ingham Circuit Court against Edward Rose Realty, Inc., and others, seeking an order of condemnation establishing permanent easements through two apartment complexes owned by the defendants for the purpose of allowing Continental Cablevision to provide cable television service to tenants of the complexes as authorized by city ordinance. The court, Carolyn Stell, J., upheld the condemnation as valid. The defendants were granted leave to file two separate appeals. The appeals were consolidated.

The Court of Appeals *held:*

The proposed condemnation exceeds the city's authority to take private property through the power of eminent domain.

1. When the power of eminent domain is exercised in a way benefiting specific and identifiable private interests, a court inspects with heightened scrutiny a claim that the public interest is the predominant interest being advanced. The public benefit must not only be the primary benefit conferred by the condemnation, but must also be clear and significant rather than speculative or marginal. The court in this case took an overly narrow view in ruling that, because the easements were to be held by the city and not conveyed to Continental Cablevision, the heightened scrutiny test did not apply. Under the circumstances of this case, the heightened scrutiny standard should be applied: the proposed easement would directly benefit Continental Cablevision by giving it the ability to reach potential new customers, the easements would be made available to Continental Cablevision and the city would be fully indemnified by Continental Cablevision, the commercial profit would belong to Continental Cablevision, the easements would be the city's in name only, and the proposed easements are for the purpose of providing essentially commercial cable television service.

2. The city's proposed condemnation of easements is not made legitimate by the finding of the court that the following franchise cable benefits were significant: universal service to all

residents, an emergency override system, and a franchise fee paid to the city by the cable company.

3. Although the public, education, and government channels that the city requires Continental Cablevision to provide serve a valid public purpose, the primary beneficiary of the taking is not the public, but rather Continental Cablevision. The public benefit is marginal and secondary to the commercial benefits flowing to Continental Cablevision.

4. While the provision of franchise cable service to the defendants' tenants, who already have access to nonfranchise cable service through a private satellite cable system offered by the defendants, may constitute a public purpose, that purpose is marginal at best and is clearly outweighed by Continental Cablevision's interest in expanding its customer base and generating additional revenues.

Reversed.

*Alvan P. Knot,* City Attorney, and *Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland* and *Jeffery V. Stuckey*), and *Latterman & Associates* (by *Mark A. Latterman*), for the City of Lansing.

*Farhat, Story & Kraus, P.C.* (by *Richard C. Kraus*), and *Winston & Strawn* (by *Deborah C. Costlow*), for Edward Rose Realty, Inc., Trappers Cove Apartments—Phase III, and Edward Rose Associates, Inc.

Before: MARILYN KELLY, P.J., and MACKENZIE and GRIBBS, JJ.

MACKENZIE, J. In these condemnation actions, the City of Lansing seeks permanent easements through two apartment complexes owned by defendants for the purpose of allowing Continental Cablevision to provide cable television service to tenants of the complexes. The proposed condemnation is supported by an ordinance passed by the Lansing City Council that authorizes condemnation proceedings upon the request of a cable televi-

·sion franchisee. Defendants appeal by leave granted from an order upholding the validity of the proposed condemnation and with regard to certain underlying orders involving evidentiary rulings and other procedural matters. We conclude that the proposed condemnation exceeds the city's authority to take private property through the power of eminent domain. Accordingly, we reverse.

I

In 1971, the City of Lansing, by ordinance, established a nonexclusive franchise system for cable television service to the general public. Under the ordinance, a franchisee must provide public, education, and government channels (PEG channels) carrying local government and education programming, together with facilities for the public to create and broadcast its own programs on these channels. The ordinance also contains a provision requiring universal service throughout the city. Further, the ordinance requires a "911 override" allowing the broadcast of information in the event of an emergency. Only Continental Cablevision has obtained a franchise under this ordinance.

From 1980 to 1987, Continental Cablevision contracted with defendants to provide cable television service to residents of defendants' apartment complexes. At the end of the contract term, defendants elected not to renew the contract, and instead purchased and installed private cable television systems, referred to as SMATV (Satellite Master Antenna Television), at the apartment complexes. For a fee in addition to monthly rent, tenants at the apartments can obtain from defendants SMATV service of up to sixty-six channels.

After defendants notified Continental Cablevision that its contract to provide service at the

apartment complexes would not be renewed, the Lansing City Council passed Ordinance 753. That ordinance authorizes the city to commence condemnation proceedings upon request of a cable television franchisee whenever the owner of any dwelling refuses, directly or indirectly, to permit any resident of such building to receive franchised cable service. Pursuant to the ordinance, the city, at the behest of Continental Cablevision, passed resolutions condemning easements on defendants' property for the purpose of providing Continental Cablevision service to residents at defendants' apartment complexes. Defendants challenged the condemnation on the basis of public necessity. The trial court found that Ordinance 753 serves a public interest and upheld the condemnation as valid.

II

Both the Fifth Amendment of the federal constitution and Const 1963, art 10, § 2 prohibit the taking of private property without just compensation. Any condemnation must serve a public purpose or public necessity, or the condemnation is invalid. *Pere Marquette R Co v United States Gypsum Co,* 154 Mich 290, 297; 117 NW 733 (1908). When the power of eminent domain is exercised in a way benefiting specific and identifiable private interests, a court inspects with heightened scrutiny the claim that the public interest is the predominant interest being advanced. *Poletown Neighborhood Council v Detroit,* 410 Mich 616, 634-635; 304 NW2d 455 (1981). See also *Center Line v Chmelko,* 164 Mich App 251; 416 NW2d 401 (1987). The public benefit must not only be the primary benefit conferred by the condemnation, but must also be "clear and significant" rather

than "speculative or marginal." *Poletown, supra,* pp 634-635.

Defendants contend that because the city's condemnation power in this case was exercised in a way that benefited a private interest—Continental Cablevision—the trial court should have employed the *Poletown* "heightened scrutiny" standard in examining the city's claim that the public interest is the predominant interest being advanced. The trial court ruled that the heightened scrutiny test does not apply because the easements were to be held by the city and not conveyed to Continental Cablevision.

We think that the trial court's position represents an overly narrow view. At issue is whether "the condemnation power [has been] exercised in a way that *benefits* specific and identifiable private interests." *Poletown, supra,* p 634. (Emphasis added.) In this case, the proposed easement would directly benefit Continental Cablevision by giving it the ability to reach potential new customers. Further, in *Chmelko, supra,* the heightened scrutiny standard was applied where the land in question was to be "*made available* to a private party." *Id.,* p 262. (Emphasis added.) In this case, the easements would be made available to Continental Cablevision and the city would be fully indemnified by Continental Cablevision. In short, the proposed easements are for the purpose of providing essentially commercial cable television service; Continental Cablevision provides such service, the city does not. The easements thus would be the city's in name only. Under these circumstances, where the commercial profit would belong to Continental Cablevision, the heightened scrutiny standard should be applied even though the proposed easements would technically be held by the city.

### III

We next consider whether, applying the heightened scrutiny standard, the benefits of tenant access to Continental Cablevision service constitute a sufficient public purpose to justify the condemnation of defendants' property. The trial court ruled that, even if the *Poletown* heightened scrutiny test applied, the benefits of cable access constituted a sufficient public purpose to warrant condemnation.

### A

The trial court analyzed plaintiff's claim of a public necessity by finding four primary "franchise cable benefits": (1) the PEG channels and the accompanying studio, equipment, and training personnel, (2) universal service, (3) the emergency override system, and (4) the franchise fee paid to the city by the cable company.

We are of the opinion that, of these factors, only the first might legitimize the city's condemnation of easements. Universal service cannot be considered a public benefit unless it has already been determined that the service universally provided is itself a public benefit. Moreover, the fact that cable franchisees may be required to offer service to all residents and refrain from "redlining" does not justify placing an access burden on landlords. In short, the universality requirement that cable television operators must satisfy cannot transform an otherwise nonpublic service into a public one.

The emergency override system is, as admitted by plaintiff's witnesses, duplicative of those used by local television and radio stations. The city also has an emergency siren system. The incremental public benefit from the emergency override system appears negligible.

In addition, the franchise fee reaped by the city from the franchisee does not legitimize the taking. It is the use to which the property is put that must be public, not the indirect financial benefit to the municipality. See *Chmelko, supra,* pp 263-264. Raising revenue properly belongs to the taxing power of a public body, and taxes may be levied and revenue raised without taking private property. See *Poletown, supra,* p 633.

B

The trial court found that the primary difference between Continental Cablevision's service and defendants' SMATV service lies in the availability of PEG channels on Continental Cablevision. The public benefit in this case thus consists chiefly of the provision of PEG channels to residents already able to receive SMATV but wishing to receive the PEG channels. This benefit stands in sharp contrast to the purpose of addressing Detroit's marked need for economic development that apparently justified taking measures benefiting private interests in *Poletown.* Nevertheless, it is apparent that the PEG programming—including the broadcast of city council meetings and supplemental courses offered by local educational institutions —serves a valid public purpose.

C

Finally, under the second prong of the *Poletown* heightened scrutiny test, we must decide whether the private or public benefit predominates. Under the circumstances of this case, we conclude that the primary beneficiary of the taking is not the public, but rather Continental Cablevision. The condemnation permits Continental Cablevision to

use the easements not merely to provide PEG programming to interested tenants of defendants' apartment complexes, but also to sell to hundreds of residents its full range of basic and premium services essentially duplicative of the defendants' SMATV programming. The public benefit flowing from this action is marginal at best and must be deemed secondary to the commercial benefits flowing to Continental Cablevision. As noted by defendants, Ordinance 753 does not confer upon *tenants* the right to access franchise cable service; it confers upon the cable franchisee the ability to provide access. Rather than benefiting the public interest, it appears that the proposed condemnation is an attempt by a private entity to use the city's taking powers to acquire what it could not get through arm's length negotiations with defendants.

IV

Under any standard of review, the primary purpose of a taking must be public. In this case, while the provision of franchise cable service to tenants who already have access to nonfranchise cable service may constitute a public purpose, that purpose is marginal at best and is clearly outweighed by Continental Cablevision's interest in expanding its customer base and generating additional revenues. Accordingly, the judgment of the lower court with respect to the issue of necessity is reversed.

This disposition makes it unnecessary to decide defendants' remaining claims.

Reversed.